**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **BARBARA MURCHISON,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil No. JFM-08-2665** |
| **MICHAEL J. ASTRUE, Commissioner,** | : | |
| **Social Security Administration,** | : | |
| **Defendant.** | : | |

...o0o...

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("SSA" or "the Agency"), by the undersigned counsel, submits this Reply in Support of his Motion to Dismiss or, in the Alternative, for Summary Judgment.

## I.   INTRODUCTION

Plaintiff Barbara Murchison, an employee of the SSA, has brought this action, alleging that the Agency has failed to comply with a remedial order of the Office of Federal Operations ("OFO") of the U.S. Equal Employment Opportunity Commission ("EEOC").  Plaintiff also alleges that she was discriminated on the bases of her race (African-American) and age (DOB 7/23/46) when she was not selected for promotions to positions in April 2001 and in April 2002. The complaint should be dismissed with prejudice or summary judgment entered in favor of Defendant because the Agency has complied with the OFO order and, to the extent the order may be deemed not to have been complied with, such non-compliance is due to Plaintiff. Further, Plaintiff has failed to establish a *prima facie* case of discrimination and to rebut the Agency's legitimate nondiscriminatory reasons for the non-selections.

## II.   ARGUMENT

**A.     The OFO Found that the Agency Has Complied with Its Remedial Order.**

Plaintiff alleges that the Agency has not complied with the OFO remedial order and asks this Court to order the Agency to comply.  *See* Paper 10 at ¶¶ 11-63 (Count I) and Relief.  The Fourth Circuit has explained that, "[i]n a suit for enforcement, the issue is not liability or the remedy, as it is in a civil action, but rather whether the federal employer has complied with the OFO's remedial order."  *Laber v. Harvey*, 438 F.3d 404, 416-17 (4th Cir. 2006).  Thus, Plaintiff may maintain an enforcement claim in this Court only "if the EEOC has made a prior determination that the agency is not in compliance with the EEOC's earlier Order or if the agency has failed to file a required compliance report."  *Malek v. Leavitt*, 437 F. Supp. 2d 517, 524 (D. Md. 2006) (citing 29 C.F.R. § 1614.503(g)).[1]

The decision of the EEOC Administrative Judge ("AJ") became final on or about May 31, 2006.  The AJ ordered the Agency to undertake certain remedial action, including the return of Plaintiff to her prior position or a position acceptable to her, payment of compensatory damages, submission of a compliance report and posting of a notice on its premises.  On July 14, 2006, the Agency accepted and agreed to implement the AJ's decision and ordered relief.

---

[1]  This regulation provides:

> Where the Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII, the ADEA, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes.

29 C.F.R. § 1614.503(g).

Plaintiff subsequently appealed to the OFO the AJ's decision finding no discrimination on the non-selection for the two positions.  On or about July 25, 2008, the OFO affirmed the AJ's decision with regard to the non-selections and ordered the Agency, "[t]o the extent it has not already done so," to undertake the remedial action ordered by the AJ.  Paper 17, Exh. 1 (OFO Decision (July 25, 2008)) at 6.  Contrary to Plaintiff's assertions, the OFO decision does not constitute a finding of non-compliance.  On August 5, 2008, the OFO wrote to the Agency, stating that it would monitor the Agency's compliance with its order.  *See* Paper 20, Exh. 14 (OFO Letter).[2]

Thereafter, as discussed in Defendant's motion for summary judgment, the OFO determined that "[t]he Agency has provided us documentation sufficient to demonstrate that it has taken the corrective action(s) ordered in the Commission's decision" and, therefore, decided to cease compliance monitoring activity in this case.  Paper 17, Exh. 2 (Letter from compliance officer John Flanigan to Phil Kete (Feb. 6, 2009)).  The OFO further stated that the Agency "did provide copies of documents demonstrating compliance."  Paper 17, Exh. 3 (Letter from compliance officer John Flanigan to Alex S. Gordon (May 22, 2009)) at 1.  The Agency provided the documentation, along with an explanatory cover e-mail.  *See* Paper 17, Exh. 4 (E-mail from Lamaas Stewart-Bey to Cecily Starks (Sept. 30, 2008)).  The OFO found that the Agency's submission of the "documents demonstrating compliance" and the explanatory cover e-mail were sufficient in concluding that the Agency has complied with its order.

In her opposition, Plaintiff argues, without any supporting authority, that the "cease monitoring" letter from Mr. Flanigan is somehow invalid and that it "does not purport to be 'for

---

[2]  Plaintiff attached 15 exhibits to her initial opposition brief (Paper 20), but she subsequently filed a corrected opposition (Paper 25).

the commission.'"  Paper 25 at 25.  Federal courts have recognized that such "cease monitoring"
letters from EEOC compliance officers in the Compliance and Control Division – as Mr.
Flanigan here – are a proper and accepted means to convey the EEOC's findings of compliance.
*See, e.g., Dellinger v. Potter*, 2009 WL 2243834 (S.D. Ohio 2009); *Nolan v. Nicholson*, 2007
WL 2119237 (W.D. Pa. 2007).  Mr. Flanigan explained that, as a compliance officer in the OFO,
his role "is to monitor implementation of orders contained in Commission decisions and to make
the administrative judgment that the agency has provided documentation sufficient to
demonstrate compliance with the order."  Paper 17, Exh. 3 (Letter from compliance officer John
Flanigan to Alex S. Gordon (May 22, 2009)) at 1.  The OFO, via compliance officers such as
Mr. Flanigan, makes "a judgment based upon our regulations as to whether compliance has been
obtained."  *Id.*  In this case, it is uncontroverted that the OFO made a judgment that the SSA has
complied with the OFO order.

The EEOC's determination of compliance by the Agency forecloses Plaintiff's
enforcement claim and any argument on the merits because, importantly, 29 C.F.R. §
1614.503(g) "does not provide for judicial review of the EEOC's compliance decision itself."
*Puckett v. Potter*, 342 F. Supp. 2d 1056, 1064 (M.D. Ala. 2004).  Under these circumstances,
Plaintiff's enforcement claim (*i.e.,* Count I of her complaint) is "not properly before this court."
*Malek*, 437 F. Supp. 2d at 523.  Accordingly, Defendant is entitled to summary judgment
because Plaintiff cannot maintain an enforcement action against the Agency.  *See id.* at 525
(granting summary judgment).

If this Court chooses to review the EEOC's compliance decision itself, however, the
evidence shows that to the extent the order may be deemed not to have been complied with, such

non-compliance is due to Plaintiff.  Plaintiff argues that the Agency has not complied with the OFO order because she has not been returned to her former position at SSA, in the Office of Regional Communications, Inter-Governmental and Community Affairs ("ORCICA"), within the Office of External Affairs ("OEA").  From approximately October 1998 until March 2001, Plaintiff "held the position of Social Insurance Specialist, GS-13, in the Community Affairs Section of ORCICA, OEA."  Paper 17, Exh. 1 (OFO Decision (July 25, 2008)) at 1.  In a letter dated February 8, 2007, the Agency informed Plaintiff's attorney that "the Agency is prepared to return Ms. Murchison to her original position as a GS-13 Social Insurance Specialist within the Community Affairs Section."  Exh. 1 (Letter from Kia M. Finney to Phil Kete (Feb. 8, 2007)) at 2.  The Agency asked Plaintiff's attorney to inform it whether Plaintiff desired to return to her former position in ORCICA.  *See id.*  Plaintiff never "expressed any desire to the Agency to return her to her original position" in response to the Agency's offer.  Exh. 2 (E-mail from Arthur Horton to Phil Kete (June 21, 2007)).  For reasons unclear, Plaintiff, through her attorney, did not engage in any discussions with the Agency, in response to its offer, to help return Plaintiff to her original position.  *See* Exh. 3 (E-mail from Phil Kete to Kia M. Finney (Feb. 16, 2007)); Exh. 4 (E-mail from Phil Kete to Arthur Horton (June 12, 2007)).  Equities cannot permit Plaintiff to maintain an action for enforcement – for return to her position in ORCICA – when she herself has hampered efforts to effectuate that return.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's enforcement action.

**B.      Plaintiff Has Failed to Demonstrate that Her Non-Selection for the ORCICA Acting Director Position in April 2001 Was Based on Her Race or Age.**

In January 2001, Plaintiff requested a reassignment out of ORCICA and into another component of the Agency as a reasonable accommodation for her health.  *See* Paper 17, Exh. 1 (OFO Decision (July 25, 2008)) at 3.  Effective March 19, 2001, Plaintiff was reassigned to the Office of Public Inquiries ("OPI").  In March 2001, the director of ORCICA, Michele Brand, was promoted, thereby creating a vacancy in that position.  At the time, Robin Neal, a Caucasian female (DOB 6/17/50), was working as a Social Insurance Specialist, GS-13, in ORCICA.  In April 2001, Neal was appointed to serve as Acting Director of ORCICA, via a noncompetitive temporary promotion, for four months (120 days).  *See* Paper 17, Exh. 5 (Aff. of Robin Neal (June 26, 2003)) at ¶ 3; Paper 17, Exh. 6 (SF-50s of Robin Neal); Paper 17, Exh. 7 (Federal Personnel/Payroll System printout for Robin Neal (April 22, 2001)).  Plaintiff alleges that the Agency discriminated against her, on the basis of race and age, by appointing Neal to the temporary promotion.  Plaintiff has failed to provide any evidence, in her opposition, to support these conclusory allegations of discrimination.

**1.      Plaintiff Has Failed to Establish a *Prima Facie* Case of Discriminatory Denial of Promotion.**

It is well established in this jurisdiction that under the *McDonnell Douglas* burden shifting framework, "a plaintiff alleging Title VII discrimination must first make out a *prima facie* case of that discrimination."  *Rupert v. Geren*, 605 F. Supp. 2d 705, 714 (D. Md. 2009).  *See also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir.) ("the plaintiff-employee must first prove a *prima facie* case of discrimination by a preponderance of the evidence"), *cert. denied*, 543 U.S. 876 (2004); *Christian v. City of Annapolis*, 2007 WL 2405663, *2 (D. Md. 2007) ("A

plaintiff must first establish a prima facie case of. . . discrimination under Title VII."). In both her complaint and opposition, Plaintiff has failed to establish (or even to attempt to establish) a *prima facie* case of discrimination.[3]

To establish a *prima facie* case of disparate treatment based on failure to promote, as discussed in Defendant's motion for summary judgment, Plaintiff "must show by a preponderance of the evidence that (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959-60 (4th Cir. 1996); *see also Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005), *cert. denied*, 546 U.S. 1214 (2006).

Plaintiff has failed to establish a *prima facie* case of race and age discrimination because she has not shown that her non-selection occurred under circumstances giving rise to an inference of discrimination. The Supreme Court has made clear that a plaintiff's burden on this element of the *prima facie* case "requires *evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.*" *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (emphasis in original) (internal quotation and alterations omitted). Further, Plaintiff must provide evidence of circumstances surrounding her non-selection "that credibly raises an inference of unlawful discrimination."

---

[3] In her opposition, Plaintiff argues that she is relieved from satisfying her initial burden of establishing a *prima facie* case because Defendant has articulated legitimate nondiscriminatory reasons for the actions at issue. *See* Paper 25 at 29. Plaintiff's argument falls under the weight of well-settled case law of this Court and the Supreme Court. Thus, this Court considers and analyzes a defendant's legitimate nondiscriminatory reason if and only if a plaintiff has established the requisite *prima facie* case.

*Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).  Plaintiff has failed to provide any such evidence.

In applying and analyzing the "under circumstances" element of the *prima facie* test, this Court and the Fourth Circuit have examined the purported comparators of a plaintiff – similarly situated employees outside the plaintiff's protected classes who were allegedly treated more favorably.  *See, e.g., Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 527 (D. Md. 2004); *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 650 (4th Cir. 2002).  In this case, for Neal to qualify as a valid comparator, Plaintiff "must show that they are similar in all relevant respects." *Heyward v. Monroe*, 166 F.3d 332, *2 (4th Cir. 1998) (Table); *see also Nichols v. Caroline County Bd. of Educ.*, 2004 WL 350337, *7 (D. Md.) ("To be valid comparators, other employees must be similarly situated in all relevant respects." (internal quotations omitted)), *aff'd*, 114 Fed.Appx. 576 (4th Cir. 2004).  These requisite similarities include performing the same or substantially similar jobs and working for the same supervisor.  *See id.*  Plaintiff and Neal were not similarly situated because they each "had different job titles and responsibilities," working in separate offices of the Agency.  *Webb v. Maryland Dep't of Health and Mental Hygiene*, 2006 WL 2700748, *4 n.2 (D. Md. 2006).  *See also Davis v. Lockheed Martin Operations Support, Inc.*, 84 F. Supp. 2d 707, 715-16 (D. Md. 2000); *Chenowith v. Asplundh Tree Expert Co.*, 928 F. Supp. 605, 610 (D. Md. 1996).

Plaintiff has failed to show that she was similarly situated to Neal, so as to establish a *prima facie* case of discrimination because – as both the AJ and the OFO found – at the time of the vacancy and Neal's temporary promotion, Plaintiff was working in OPI, an entirely separate office.  *See* Paper 20, Exh. 1 (AJ Decision (Sept. 20, 2005)) at 57-58; Paper 17, Exh. 1 (OFO

Decision (July 25, 2008)) at 4-5.  By contrast, as discussed above, Neal was working in ORCICA when the position became vacant and she was selected for it.  Plaintiff therefore has failed to show that Neal was awarded the noncompetitive temporary promotion under circumstances giving rise to an inference of discrimination because they were not similarly situated.

Accordingly, Defendant is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case of race and age discrimination.

### 2.   Plaintiff Has Failed to Show that the Agency's Legitimate Nondiscriminatory Reasons Are a Pretext for Race or Age Discrimination.

It is undisputed that the temporary promotion in April 2001 was noncompetitive, and Plaintiff has not offered any evidence to the contrary.  Federal regulations provide agencies the discretion to except from the competitive process "[a] temporary promotion, or detail to a higher grade position or a position with known promotion potential, of 120 days or less."  5 C.F.R. § 335.103(c)(3)(iii).  The SSA has adopted this Office of Personnel Management regulation in section 5.2.5. of its Management Officials Promotion Plan ("MOPP").  *See* Paper 17, Exh. 8 (SSA MOPP sec. 5.2.5.); *Milano v. Astrue*, 2008 WL 4410131, *22 and n. 24 (S.D. N.Y. 2008) (granting summary judgment).

The Agency determined that the vacant position at issue would be filled via a noncompetitive temporary promotion not to exceed 120 days because it was important to fill the vacancy promptly.  *See* Paper 17, Exh. 9 (Decl. of Phil Gambino (June 24, 2009)) at ¶ 4.  To facilitate a smooth and effective transition, under such circumstances, the standard practice of the Agency is to select a qualified and highly regarded employee from the group where the vacancy exists to fill the vacancy.  *See id.* at ¶ 5.  Noncompetitive temporary promotions, by

their very definition and nature, do not involve posted announcements or applications submitted for review.  *See id.* at ¶ 6.

The noncompetitive temporary 120-day promotion that Neal received was unquestionably proper and covered under the applicable regulations.  Indeed, Plaintiff has not contended otherwise.  Neal was selected as ORCICA acting director by Phil Gambino, the Assistant Deputy Commissioner for Communications, because Gambino considered her an outstanding employee who was very competent in the work and operation of ORCICA.  *See id.* at ¶ 7; Paper 17, Exh. 7 (Federal Personnel/Payroll System printout for Robin Neal (April 22, 2001)).  In addition, Neal was able to step right into the vacancy and effectuate a smooth transition because she already was working in ORCICA at the time.  *See* Paper 17, Exh. 9 (Decl. of Phil Gambino (June 24, 2009)) at ¶ 8.  Plaintiff has failed to prove that Defendant's legitimate nondiscriminatory explanation in this regard is a pretext for discrimination.

Plaintiff asserts that Defendant's "sole articulated non-discriminatory reason for not selecting Ms. Murchison for the temporary promotion was that several weeks earlier [Gambino] had illegally transferred her to the mailroom."  Paper 25 at 7-8.  Plaintiff alleges that this reassignment "effectively rendered her ineligible for promotion to vacancies, even temporary vacancies, in ORCICA."  *Id.* at 6.  Plaintiff's erroneous allegations find no support in the record.  Indeed, it was ***Plaintiff*** who requested reassignment ***out of*** ORCICA in January 2001 – as both the AJ and the OFO found in their factual determinations.  *See* Paper 20, Exh. 1 (AJ Decision (Sept. 20, 2005)) at 19, ¶ 67; Paper 17, Exh. 1 (OFO Decision (July 25, 2008)) at 3.  Thus, even if Plaintiff's reassignment had not been to OPI but elsewhere, she still would have been working outside ORCICA – due to her own request for reassignment – when the vacancy arose.

Nor has Plaintiff provided any evidence showing that she would have received the temporary promotion had she not been reassigned out of ORCICA.  Instead, Plaintiff merely argues that she "was highly qualified for the temporary promotion" and that her "qualifications were so superior to those of Ms. Neal."  Paper 25 at 8 and n.6; Exh. 2 (Plaintiff's Declaration) at ¶ 12.  As noted in Defendant's motion for summary judgment, however, no employees outside ORCICA – including, but certainly not only, Plaintiff – were considered to fill the vacant position.  *See* Paper 17, Exh. 9 (Decl. of Phil Gambino (June 24, 2009)) at ¶ 9.  That is, due to the non-competitive nature of the temporary promotion, Neal was not compared to anyone – including, but certainly not only, Plaintiff.  Plaintiff appears not to understand or appreciate the noncompetitive nature of the temporary promotion.  In her opposition, Plaintiff claims that she was "reject[ed] for the ORCICA temporary promotion."  Paper 25 at 33.  Plaintiff was not rejected for this temporary promotion – nor was anybody else – precisely because this was a noncompetitive appointment.  Further, Plaintiff's perception of herself and her abilities is of no moment because "[w]ith respect to the opinion testimony, we have repeatedly explained that [i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."  *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotations omitted) (affirming summary judgment).

Plaintiff relies solely on unsupported speculation in her attempt to demonstrate pretext, arguing: "One of the reasons for illegally reassigning Ms. Murchison to the mail room job was to create a pretext for not considering her for the ORICIA temporary promotion."  Paper 25 at 30. Tellingly, Plaintiff provides no evidence to support her conspiracy theory.  To the contrary, evidence submitted by Plaintiff shows that the temporary promotion was far from some

orchestrated and purposeful maneuver against her.  In response to an e-mail from Plaintiff congratulating Neal on the temporary promotion, Neal wrote: "Well, you probably won't be surprised to learn that I've been told that a 'temporary' promotion may or may not occur.  I think that the 'powers-that-be' are handling this with the idea that Michele [Brand] is on a detail only.  I am not going to get my hopes up because of previous disappointing experiences.  Oh, well."  Paper 20, Exh. 13 (e-mail correspondence (March 28, 2001)) at 1.  Neal's e-mail to Plaintiff indicates the uncertain and fluid nature of the situation.  Plaintiff's speculative assertions are insufficient to meet her heavy burden of demonstrating pretext.

Plaintiff has failed to show that the Agency's legitimate nondiscriminatory reasons regarding the noncompetitive nature of the temporary promotion or Neal's selection for the promotion are pretextual.  Indeed, there is no pretext as a matter of law.  Accordingly, Defendant is entitled to summary judgment with regard to Plaintiff's non-selection claim for the acting director position of ORCICA.

**C.   Plaintiff Has Failed to Demonstrate that Her Non-Selection for the Executive Officer Position in April 2002 Was Based on Her Race or Age.**

In April 2002, the Agency issued Vacancy Announcement No. P-1237 for the position of Public Affairs Specialist (Executive Officer), GS-1035-14, Office of Communications, OEA.  *See* Paper 17, Exh. 10 (P-1237 Announcement).  The position was temporary not to exceed one year.  Plaintiff applied for the position, and she was one of 13 applicants placed on the best qualified list ("BQL").  Plaintiff was one of four applicants who received the maximum score of 100 points.  Robin Neal, who received a score of 95 points, also made the BQL.  *See* Paper 17, Exh. 11 (BQL).  David Byrd, an African-American male (DOB 6/27/59) and the-then Associate Commissioner of OEA, was the selecting official for the executive officer position.  *See* Paper

17, Exh. 12 (EEO hearing testimony of David Byrd (June 25, 2004)) at 592:17-20.   Byrd

selected Neal for the position.  *See id.* at 592:21-23.

### 1.      Plaintiff Has Failed to Establish a *Prima Facie* Case of Discriminatory Denial of Promotion.

To establish a *prima facie* case of disparate treatment based on failure to promote, as

noted above and in Defendant's motion for summary judgment, Plaintiff "must show by a

preponderance of the evidence that (1) she is a member of a protected class; (2) her employer

had an open position for which she applied or sought to apply; (3) she was qualified for the

position; and (4) she was rejected for the position under circumstances giving rise to an inference

of unlawful discrimination."   *Evans*, 80 F.3d at 959-60; *see also Anderson*, 406 F.3d at 268.

Once again, Plaintiff has failed to establish (or even to attempt to establish) a *prima facie* case of

discrimination because she has failed to show that her non-selection occurred under

circumstances giving rise to an inference of discrimination.   As an initial matter, Plaintiff

mischaracterizes and misinterprets the selection process as a decision by the Agency "between

Ms. Neal and Ms. Murchison for promotion."   Paper 25 at 9.   The reality, of course, is that 13

applicants made the BQL, including Plaintiff and Neal, and were eligible for selection.

Byrd testified at the administrative hearing that, when he made the selection, he had

never met Plaintiff and did not know Plaintiff or anything about her other than what was in her

application for the position.  *See* Paper 17, Exh. 12 (EEO hearing testimony of David Byrd (June

25, 2004)) at 593:10-11.   There is no evidence in the record to contradict Byrd's testimony, nor

has Plaintiff offered any such evidence.   Plaintiff's application does not contain any mention of

her race or her age.  *See* Paper 17, Exh. 13 (Application of Barbara Murchison).   Indeed, because

Plaintiff was working in OPI at the time she applied for the vacancy, as Byrd explained, Plaintiff

"was not within my purview, my division of OEA at the time I assumed leadership of that division."  Paper 17, Exh. 12 (EEO hearing testimony of David Byrd (June 25, 2004)) at 594:2-5.  Further, Byrd did not conduct interviews of anyone for this position.  *See id.* at 599:20-24; Paper 17, Exh 14 (Aff. of Barbara Murchison (Feb. 11, 2003)) at ¶ 7.  Therefore, Byrd did not discriminate against Plaintiff – and, in fact, could not have done so – because he did not know, and had no way of knowing, her race or age.  Moreover, Byrd, like Plaintiff, is African-American.  That Byrd, the selecting official, is "in the same protected racial class as plaintiff. . . . weighs against an inference of discrimination."  *Hammond v. Chao*, 383 F. Supp. 2d 47, 58 and n.2 (D. D.C. 2005); *see also Reed v. Airtran Airways*, 2008 WL 4965309, *2 and n.1 (D. Md. 2008) (in reverse discrimination case brought by white female, "the fact that a white supervisor. . . acted inappropriately would give rise to no inference of discrimination").  Plaintiff has failed to provide any evidence to show that her non-selection for the executive officer position occurred under circumstances giving rise to an inference of race discrimination.

Nor did Plaintiff's non-selection occur under circumstances giving rise to an inference of age discrimination.  It is well established that "the prima facie case requires '*evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion*.'"  *O'Connor*, 517 U.S. at 312-13 (emphasis in original) (internal quotation omitted).  The Supreme Court has explained that, "[i]n the age-discrimination context, such an inference cannot be drawn from the replacement of one worker with another worker insignificantly younger."  *Id.* at 313.  In this case, Neal (DOB 6/17/50), who was selected for the executive officer position, is less than four years younger than Plaintiff (DOB 7/23/46).  That Neal is "within close proximity to Plaintiff's age clearly give[s] lie to any claim of age discrimination."

*Phair v. Montgomery County Public Schools*, 3 F. Supp. 2d 644, 647 (D. Md. 1997) (holding that plaintiff failed to prove her *prima facie* case of age discrimination), *aff'd*, 141 F.3d 1159 (4th Cir. 1998) (Table).[4]  Plaintiff has failed to rebut any of these arguments in her opposition.

Accordingly, Defendant is entitled to summary judgment with regard to Plaintiff's non-selection claim for the executive officer position.

### 2. Plaintiff Has Failed to Show that the Agency's Legitimate Nondiscriminatory Reasons Are a Pretext for Race or Age Discrimination.

Even if Plaintiff can somehow establish a *prima facie* case of race or age discrimination, the Agency has met its burden of production because it has articulated legitimate nondiscriminatory reasons for its selection decision.

David Byrd, the selecting official for this position, considered the paperwork and credentials of all 13 people on the BQL.  *See* Paper 17, Exh. 12 (EEO hearing testimony of David Byrd (June 25, 2004)) at 593:10-17.  Byrd testified that he selected Neal because of the good working relationship and rapport they had developed:

> [W]hen I came on board to the position as the Associate Commissioner, Ms. Neal was one of the people who helped me in my transition into the position. . . . I began to trust her and it became obvious to me that, that she knew what she was doing.  She helped me in terms of what I needed to do in terms of the office and how the office operated so there, there became a trust factor. . . . Ms. Neal was very helpful to let me know what my position should be, what my transition was and what my roles and responsibilities were.

*Id.* at 594:15-22, 595:12-14.  Plaintiff has failed to show that these legitimate nondiscriminatory reasons for her non-selection are a pretext for race or age discrimination.  Instead, Plaintiff relies on baseless conjecture in her attempt to prove pretext.  The evidence developed in the

---

[4]  The close proximity in age between Neal and Plaintiff also undermines any inference of age discrimination with regard to the ORCICA acting director position, as discussed in Sec. II.B., *supra.*

voluminous administrative record shows indisputably that Byrd was the selecting official for this position.  *See* Paper 17, Exh. 12 (EEO hearing testimony of David Byrd (June 25, 2004)) at 592:17-20; Paper 20, Exh. 10 (EEO hearing testimony of Phil Gambino (June 25, 2004)) at 454:21-455:4.  Plaintiff has not provided any properly supported evidence in opposition and necessary to show pretext.  Plaintiff apparently attempts to prove pretext because Byrd "admittedly consulted with his chain of command, i.e., Mr. Gambino" when Byrd made the selection.  Paper 25 at 9.  That Byrd, as the selecting official, may have consulted with colleagues as part of his decisionmaking process is proper and in no way is evidence of discriminatory pretext.

It is well established that "[a]n employer is free to create its own standards for selecting candidates for a position so long as those standards are not a mask for discrimination."  *Bailey v. Anne Arundel County, Maryland*, 259 F. Supp. 2d 421, 429 (D. Md. 2003).  *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (in conducting its hiring process, "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria."); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (although plaintiff "may have been qualified to fill the. . . position," courts are "not in a position to second guess executive hiring decisions that are based on legitimate, non-discriminatory rationales").

In this case, the Agency has articulated legitimate nondiscriminatory reasons for selecting Neal and not selecting Plaintiff (or the other 11 non-selected candidates).  As discussed above, Neal received a score of 95 on her application and Byrd valued the skills that Neal had demonstrated in their working relationship.  Byrd's consideration of these factors is entirely

appropriate because, as this Court has held, "use of subjective criteria is neither improper in the promotion selection process nor indicative of unlawful discrimination." *Johnson v. Runyon*, 928 F. Supp. 575, 583 (D. Md. 1996) ("An employer can 'properly take into account both the objective factor[s]. . . [as well as] the more subjective factors like [the employee's] good interpersonal skills and [her] ability to lead a team.'" (quoting *Amirmokri v. Baltimore Gas and Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995)), *aff'd*, 151 F.3d 1029 (4th Cir. 1998) (Table).

Plaintiff alleges that she was placed on the BQL, "received the maximum 100 points for the position but was not selected even though I trained Robin [Neal] and had more experience than she." Paper 17, Exh 14 (Aff. of Barbara Murchison (Feb. 11, 2003)) at ¶ 6. Plaintiff's self-assessment is of no relevance here and insufficient to demonstrate pretext because "[s]tanding alone, self-serving claims of superiority in a Title VII case do not suffice." *Bostron v. Apfel*, 104 F. Supp. 2d 548, 556 (D. Md. 2000), *aff'd*, 2 Fed. Appx. 235 (4th Cir.), *cert. denied*, 534 U.S. 896 (2001). That Plaintiff was placed on the BQL, along with 12 other candidates, "merely establishes that [s]he, like the many other applicants, was qualified for consideration for the promotion." *Id.* The Agency has articulated legitimate nondiscriminatory reasons, unrebutted by Plaintiff, why Neal was selected for the position over the other 12 candidates.

In her attempt to prove pretext, Plaintiff argues that "a reasonable jury could conclude, first, that Mr. Gambino had a substantive role in deciding whether Ms. Murchison or Ms. Neal would be selected for the GS 14 executive officer position, and, second, that Mr. Gambino used his influence to bar Ms. Murchison's selection as a continuation of" his alleged discrimination against her. Paper 25 at 30-31. As discussed above, however, the unrebutted evidence shows that Byrd was the selecting official and made the decision to select Neal from among the 13

candidates on the BQL; contrary to Plaintiff's erroneous representations, this was not a decision made between only her and Neal.   Plaintiff has failed to provide evidence to support her speculative assertions – and this failure is fatal to her discrimination claims because "mere speculation is not sufficient to establish pretext." *Carson v. Giant Food, Inc.*, 187 F. Supp. 2d 462, 486 n.38 (D. Md. 2002) (granting summary judgment), *aff'd* 68 Fed.Appx. 393 (4th Cir.), *cert. denied*, 540 U.S. 1074 (2003); *see also Holmes v. e.spire Communications*, 135 F. Supp. 2d 657, 664 (D. Md. 2001) ("Plaintiff's speculation that Defendants' alleged mistake must be a pretext is not sufficient evidence [to] sustain a claim under Title VII.").

Plaintiff has failed to show that the Agency's legitimate nondiscriminatory reasons are pretext.   Indeed, there is no pretext as a matter of law.   Accordingly, Defendant is entitled to summary judgment with regard to Plaintiff's non-selection claim for the executive officer position.

**D.      Plaintiff Is Not Entitled to Discovery Under Rule 56(f).**

In an attempt to stave off summary judgment, Plaintiff has submitted a declaration under Federal Rule of Civil Procedure 56(f), claiming that she is entitled to discovery in this case.   *See* Paper 20, Exh. 2 (Decl. of Barbara J. Murchison (July 29, 2009)).   Because of Plaintiff's failure to satisfy her threshold legal burdens, as set forth herein and in the motion for summary judgment – *i.e.,* her failure to establish a *prima facie* case of race and age discrimination and her failure to rebut the legitimate nondiscriminatory reasons for the Agency's actions – Plaintiff's Rule 56(f) declaration should be disregarded.   Disregard also is proper because a large volume of documents has been available to Plaintiff from the employment discrimination action she instituted and thorough administrative investigations conducted over the past number of years.

An affidavit or declaration filed in opposition to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In particular, this Court has held: "To oppose summary judgment under Rule 56(f), a party's Rule 56(f) motion must contain: (1) the information sought or how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful."  *Chahil v. Glickman*, 2000 WL 34468515, *4 (D. Md. 2000) (internal citations omitted), *aff'd*, 22 Fed.Appx. 200 (4th Cir. 2001).

Plaintiff's Rule 56(f) declaration lacks this required information.  For example, Plaintiff asserts in her declaration: "Without discovery I cannot obtain the contemporaneous written records and communications which were created by the agency official related to the subjects of counts 2 and 3 of my complaint."  Paper 20, Exh. 2 (Decl. of Barbara J. Murchison (July 29, 2009)) at ¶ 31.  Significantly, Plaintiff fails to specify how, even if she obtained this or any of the desired information in discovery, such information would raise a genuine issue of material fact sufficient to preclude summary judgment.  *See Malghan v. Evans*, 118 Fed.Appx. 731, 734 (4th Cir. 2004) (affirming summary judgment where plaintiff "failed to make clear what information he sought, offered no supporting facts, and instead made only generalized statements regarding the need for more discovery").  Plaintiff has failed to make a specific showing that any of the discovery sought would preclude summary judgment by rebutting Defendant's arguments and supporting evidence.  Plaintiff makes clear from her opposition that she relies solely on conjecture as the basis for her discovery request.  For example, Plaintiff asserts, without any evidentiary support: "Leaving aside everything else, it is **highly likely** that

there are contemporaneous records of the decisions to get Ms. Murchison out of ORCICA in time to use that as a pretext for selecting Ms. Neal for the temporary promotion." Paper 25 at 34 (emphasis added).  Plaintiff further speculates, with regard to Byrd's selection of Neal: "It is **_highly unlikely_** that Mr. Gambino and Ms. Brand would have failed to brief him on the undesirability of promoting Ms. Murchison.  Evidence of those briefings would be found in the depositions of Gambino, Brand, and Byrd." *Id.* at 35 n.9 (emphasis added).  Plaintiff's request for discovery under Rule 56(f) at this juncture amounts to nothing more than an impermissible fishing expedition.[5]

Defendant has set forth arguments and evidence – both herein and in the motion for summary judgment – showing that Plaintiff has failed to establish a *prima facie* case of race and age discrimination and has failed to rebut the Agency's legitimate nondiscriminatory reasons for its actions.  Therefore, summary judgment is proper here without discovery "[i]n light of [Plaintiff's] failure to make out a prima facie case as to any of her claims." *Green v. Caldera*, 19 Fed.Appx. 79, 81 (4th Cir. 2001) (affirming summary judgment without discovery ["b]ecause it was clear from the materials accompanying the pleadings of both parties that no genuine dispute existed as to a material aspect of any of [plaintiff's] claims").  Further, Plaintiff's Rule 56(f) declaration is "insufficient to postpone ruling on the summary judgment motion" because Plaintiff also has "failed to demonstrate that additional discovery would aid in rebutting [the Agency's] legitimate reason[s]" for its actions.  *Malghan*, 118 Fed.Appx. at 734.  *See also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420-21 (granting summary judgment without

---

[5]  Indeed, for example, during the EEOC administrative hearing on June 25, 2004, Plaintiff's attorney cross-examined Gambino and made the decision not to ask him any questions about either of the selections now at issue, for the acting director position and the executive officer position.

discovery because plaintiff "cannot establish a *prima facie* case of either retaliation or discrimination" and thus "has failed to demonstrate that the evidence he seeks to discover will materially affect the outcome of this case"), *aff'd*, 266 Fed.Appx. 274 (4th Cir.), *cert. denied*, 129 S.Ct. 259 (2008).

The administrative records for Plaintiff's claims are voluminous and well-developed. These records, from the Agency and the EEOC, together consist at least of many hundreds of pages – which include documentary evidence, affidavits and hearing transcripts. Yet Plaintiff has "failed to identify any facts essential to [her] opposition that were not already available to [her]." *Boyd v. Guiterrez*, 214 Fed.Appx. 322, 323 (4th Cir. 2007) (affirming grant of summary judgment and denial of plaintiff's 56(f) motion, "[g]iven the extent to which numerous documents and affidavits submitted during his EEOC proceedings were already available to" plaintiff). Indeed, Plaintiff submitted 15 exhibits with her opposition here. *See* Paper No. 20 and Plaintiff's Exhibit List; *Chahil*, 2000 WL 34468515 at *4 ("As indicated by the many exhibits attached to the present motion and opposition, the record was well developed at the administrative level."). Therefore, disregard of Plaintiff's Rule 56(f) declaration is proper and justified because "Plaintiff's claims were thoroughly investigated at the administrative level" and she "provides no reason as to why this investigative material does not provide a sufficient basis for [her] response to Defendant's Motion for Summary Judgment." *Amirmokri*, 437 F. Supp. 2d at 421.

Plaintiff's Rule 56(f) declaration plainly does not meet the criteria required for permitting discovery because Plaintiff has not demonstrated that the information sought is unavailable now; is essential in order for her to prepare an opposition; and, most importantly, would refute

Defendant's argument that she cannot possibly make a *prima facie* case as a matter of law on any of her claims or show pretext. *See, e.g., Lurie v. Meserve*, 214 F. Supp. 2d 546, 548-49 (D. Md. 2002) (granting summary judgment without additional discovery sought by plaintiff in Rule 56(f) affidavit); *Chahil*, 2000 WL 34468515 at *4 (same).  Accordingly, Plaintiff's request for additional discovery should be denied and Defendant's motion for summary judgment should be granted at this time.

### III.   CONCLUSION

For the reasons set forth herein and in his motion for summary judgment, Defendant respectfully requests that the Court dismiss Plaintiff's amended complaint with prejudice or, in the alternative, grant summary judgment for Defendant.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


_____/s/_____
Alex S. Gordon
Assistant United States Attorney
Federal Bar No. 27468
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
ph (410) 209-4800
fx: (410) 962-9947
Alex.Gordon@usdoj.gov

Of Counsel:
Kimberly L. Schiro
Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278