IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARBARA MURCHISON                    *
                                     *
        v.                           *        Case No.: 08-cv-02665-JFM
                                     *
MICHAEL J. ASTRUE                    *
                                  ****

MEMORANDUM

    Barbara Murchison ("Plaintiff") filed an amended complaint against Defendant Michael

J. Astrue, Commissioner of the Social Security Administration ("SSA"), for declaratory and

injunctive relief and for money damages under Title VII of the Civil Rights Act of 1964, the Age

Discrimination in Employment Act, and the Rehabilitation Act. Defendant has filed a motion to

dismiss or, in the alternative, for summary judgment. For the reasons articulated below, this

Court will grant Defendant's Motion for Summary Judgment.

FACTS

    The following facts are set forth in the light most favorable to the nonmoving party. *See*

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986).

    The SSA is divided into eleven departments, one of which is the Office of

Communications ("OCOMM"). OCOMM is subdivided into three offices: the Office of External

Affairs ("OEA"), the Office of Communications Planning and Technologies ("OCPT"), and the

Office of Public Inquiries ("OPI"). (Pl.'s Mem. in Opp. to Def.'s Second Mot. to Dismiss or for

Summ. J. ("Pl.'s Mem."), Ex. 1 (*Murchison*, EEC Case. No. 120-2003-00489X (2005)) at 3.)

OEA is further subdivided into two divisions, one of which is the Office of Regional

Communications, Inter-Governmental and Community Affairs ("ORCICA"). (*Id.*, Ex. 1 at 3.)

1

OPI is subdivided into three divisions, one of which is the Public Inquiries Distribution Center ("PIDC"). (*Id.*, Ex. 1 at 3.)

Plaintiff is an African-American woman born on July 23, 1946. She is currently a Social Insurance Specialist (Writer), GS-13, in OPI, and she has been employed by the SSA since 1969. (See Am. Complaint for Declaratory and Injunctive Relief and for Money Damages ("Am. Complaint") 2.) Plaintiff suffers from disabilities—cardiac valvular insufficiency, hypertension, and gastroesophageal reflux disorder—which prevent her from engaging in various physical activities. (Pl.'s Mem., Ex. 1 at 46).

Philip A. Gambino—a white male born on March 13, 1953—is the Assistant Deputy Commissioner for OCOMM. (*Id.*, Ex. 1 at 4.) Michelle Brand—a white female born on June 28, 1951—was the Director of ORCICA, where she was Plaintiff's direct supervisor, until March of 2001, when she became the Senior Advisor to the Deputy Commissioner for Communications. (*Id.*, Ex. 1 at 4.) Ms. Brand is no longer employed by the SSA. David Byrd—an African-American male born on June 27, 1959—was the Associate Commissioner of OEA from January 2002 until January 2003. (*Id.*, Ex. 1 at 4.)

In October of 1998, Plaintiff was promoted to the position of Social Insurance Specialist (Team Leader) in the Community Affairs Section of ORCICA (GS-13). (*Id.*, Ex. 1 at 6.) Leading up to 2001, Ms. Brand engaged in a series of discriminatory and harassing actions toward Plaintiff. (*See id.*, Ex. 1 at 42, 54–57.) On October 13, 2000, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint. (*Id.*, Ex. 1 at 6.) By January of 2001, Plaintiff and "[Ms. Brand] had sufficient difficulties that . . . [Plaintiff] requested reassignment as a reasonable accommodation for her health." (*Id.*, Ex. 3 (*Murchison*, EEOC Appeal No. 0120064690 (2008)

at 3.) Plaintiff requested reassignment to any office within OCOMM except OPI "because [OPI] is not really considered a part of OCOMM and no one receives any recognition or awards." (*Id.*, Ex. 1 at 19.)  Nonetheless, as of March 19, 2001, Plaintiff was reassigned, at the urging of Mr. Gambino, to a PIDC position within OPI. (*See Id.*, Ex. 1 at 23, 25.)  At around the same time, Mr. Gambino moved Ms. Brand from her position as Director of ORCICA to the position of Senior Advisor in the office of the Deputy Commission for Communications. (*Id.*, Ex. 1 at 29.)

Because of Ms. Brand's departure, the SSA sought an employee to fill a four month temporary position as Acting Director of ORCICA. (*Id.*, Ex. 3 at 4.) In April of 2001, Mr. Gambino chose Robin Neal—at the time a Social Insurance Specialist, GS-13, in the Community Affairs Section of ORCICA—to fill the position. (*Id.*, Ex. 3 at 4.)  Ms. Neal is a white woman born on June 17, 1950. (*Id.*, Ex. 1 at 5.)  Mr. Gambino stated in an affidavit that he chose Ms. Neal because he wanted to hire someone from within ORCICA in order to fill the position "promptly" and "facilitate a smooth and effective transition." (Def.'s Mem. of Law in Support of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mem."), Ex. 9 ¶¶ 4–6.).) Furthermore, Mr. Gambino considered Ms. Neal "an outstanding employee who was very competent in the work and operation of ORCICA." (*Id.*, Ex. 9 ¶ 8.)

Plaintiff subsequently filed another formal EEO complaint on June 15, 2001, alleging the SSA discriminated against her based on race, sex, religion, color, disability, age, and retaliation for prior protected activity (filing complaints with the EEO). (Pl.'s Mem., Ex. 3 at 2.)

In August of 2001, the Plaintiff was re-assigned to a new, but still non-supervisory, position as Social Insurance Specialist (Writer), GS-13, in OPI. (*See id.*, Ex. 1 at 31–32.)

In April of 2002, Ms. Neal was again promoted, this time to Public Affairs Specialist (Executive Officer), GS-1035-14, in OEA. (*Id.*, Ex. 1 at 25.)  Plaintiff also applied for this position and, with Ms. Neal and eleven other applicants, was placed on the best qualified list. (*Id.*, Ex. 1 at 25.) Plaintiff was one of four applicants who received a maximum score of 100 points, while Ms. Neal received a score of 95 points. (*Id.*, Ex. 1 at 25.)  Mr. Byrd testified in the administrative hearing that he chose Ms. Neal for the position because it required a close working relationship with the Associate Commissioner, he had a good working relationship with and trusted Ms. Neal, and he did not know Plaintiff. (*Id.*, Ex. 1 at 25.) In making this decision, Mr. Byrd consulted with Mr. Gambino (who recommended Ms. Neal for the promotion), but did not conduct any interviews of applicants. (*Id.* at 9–10 (citing *id.*, Ex. 10 at 454–55).) Although the position was advertised as a one-year position, Mr. Byrd later made it permanent. (*Id.*)

In 2005, an administrative law judge (ALJ) found that some of Plaintiff's allegations of harassment and disparate treatment by her supervisors amounted to unlawful discrimination. Specifically, the ALJ found that the SSA discriminated against Plaintiff, and in some cases retaliated against Plaintiff for her EEO activity, by denying her religious compensatory time, selecting undesirable job assignments for her (including her transfer from ORCICA to OPI), and harassing her via moving her workplace to an annex location and giving her a low evaluation. (*Id.*, Ex. 1 at 41–60.)  Additionally, the ALJ found the agency did not discriminate against Plaintiff in failing to promote her to Acting Director of ORCICA. (*See id.*, Ex. 3 at 4–5 (citing *id.*, Ex. 1.).) The ALJ found that Plaintiff failed to make a *prima facie* case of discrimination because it was "pure speculation" that but for her reassignment out of ORCICA she would have received the promotion. (*Id.*, Ex. 3 at 4 (citing *id.*, Ex. 1).) Finally, the ALJ held that the agency did not discriminate against Plaintiff by failing to promote her to Executive Officer in OEA. (*Id.*,

4

Ex. 3 at 5 (citing *id.*, Ex. 1).) Although Plaintiff made a *prima facie* showing of discrimination, the ALJ held that the SSA showed a legitimate nondiscriminatory reason for Ms. Neal's promotion to Executive Officer—that Mr. Byrd had experience working with and trusted Ms. Neal—and that Plaintiff failed to rebut this justification.[1]  (*Id.* at 5 (citing *id.*, Ex. 1).)

 The ALJ ordered the SSA to (1) return Plaintiff to former position as a Team Leader in ORCICA, (2) credit Plaintiff 2.75 hours of religious compensatory time, (3) conduct EEO training for SSA managers, (4) pay Plaintiff compensatory damages and attorneys' fees and costs, and (5) post a non-discrimination notice. (*Id.*, Ex. 3 at 2.)

On July 14, 2006, the SSA, pursuant to 29 C.F.R. Section 1614.110, adopted the ALJ's findings and agreed to implement the ALJ's remedies. (*See id.*, Ex. 3 at 2.)

Plaintiff was not, however, immediately returned to her former position in ORCICA. The EEOC attributed this delay to the fact that "her complaint was subsumed in a class complaint certified by the [EEOC]." (*Id.*, Ex. 3 at 1.) However, on February 8, 2007, the SSA sent Plaintiff's counsel a letter stating that it was "prepared to return [Plaintiff] to her original position as a GS-13 Social Insurance Specialist within the Community Affairs Section." (Reply in Support of Def.'s Mot. to Dismiss or, in the Alternative, For Summ. ("Def.'s Reply"), Ex. 1.) This letter asked whether Plaintiff wanted to return to this position or keep her current position in OPI, and requested a response within five business days or "the [SSA] will presume that [Plaintiff] desires to remain in her position in OPI . . . ." (*Id.*, Ex. 1) The letter also implied that, in spite of the ALJ's decision, the SSA did not believe that this "original position" was that of a team leader. (*Id.*, Ex. 1.) Plaintiff's counsel responded by email on February 16, 2008 rejecting

---

[1] The ALJ also made other findings of law and fact not relevant to the case here.

the SSA's offer and stating: "the [ALJ] ordered the agency to return Ms. Murchison to her team leader position or its equivalent. It appears that Ms. Murchison's former team leader position no longer exists. Please provide me a list of the GS 13 and GS 14 team leader positions in headquarters." (*Id.*, Ex. 3 (internal citations omitted).)

Plaintiff appealed the ALJ's decision to the Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations ("OFO"),[2] challenging the finding that the SSA did not discriminate against Plaintiff in failing to promote her to Acting Director of ORCICA or an Executive Officer in OEA. (Pl.'s Mem., Ex. 3 at 1.) While this appeal was pending, Plaintiff also filed a petition for enforcement of the ALJ decision, under 29 C.F.R. Section 1614.504,[3] seeking "exclusion from the pending class complaint so that the relief ordering the agency to return to her former position could take effect." (*Id.*, Ex. 3 at 1.)

On July 25, 2008, the OFO affirmed the ALJ decision rejecting Plaintiff's claims of discrimination in the two promotions. (*See id.*, Ex. 3.) The OFO also, however, held that Plaintiff's complaint should not be subsumed in the related class complaint, the SSA should implement the ALJ's remedial order, and Plaintiff should therefore be returned to her original position. (*Id.*, Ex. 3 at 2–3.)

The OFO ordered the SSA to, within thirty days, "return complainant to the position of Social Insurance Specialist (Team Leader), Community Affairs Section, ORCICA, OEA, OCOMM, GS-13 (or its equivalent acceptable to her)." (*Id.*, Ex. 3 at 6.) The OFO also ordered

---

[2] The OFO is a division of the EEOC that is responsible for hearing appeals of agency or ALJ decisions. *See* U.S. EQUAL EMPLOYMENT OPPORTUNITY COMM'N, OVERVIEW OF FED. SECTOR EEO COMPLAINT PROCESS, http://www.eeoc.gov/federal/fed_employees/complaint_overview.cfm.

[3] This administrative petition for enforcement of an *ALJ* decision under Section 1614.504 is a different administrative action than an administrative petition for enforcement of an *OFO* decision under Section 1614.503, which is described below. Plaintiff only filed a Section 1614.504 petition; she never filed a 1614.503 petition.

the SSA to (1) credit Plaintiff with 2.75 hours of religious compensatory time, (2) pay Plaintiff compensatory damages and attorneys' fees, (3) "conduct four [] hours of training for all supervisory and managerial employees involved in the agency's administration of religions compensatory time for complainant, complainant's transfer, her job assignments following her transfer, her move to the annex, and her low evaluation[,]" and (4) "consider appropriate disciplinary action against the selecting official and report its decision."  (*Id.*, Ex. 3 at 6.)

The OFO required the SSA to "submit a report of compliance to the Commission's Compliance Officer . . . includ[ing] documentation of the agency's action as evidence that the corrective action has been taken and implemented" or, if the SSA has taken the proper action, to "only report that to the Compliance Officer with documentation showing what action was taken." (*Id.*, Ex. 3 at 6–7, n.7.) The order also stated: "the agency must send a copy of all submissions to the complainant." (*Id.*, Ex. 3 at 7.)

The OFO decision also included what appears to be boilerplate language, *see, e.g.*, *Mays v. Potter*, 2008 WL 344198, *4 (N.D. Cal. 2008) (unpublished), explaining Plaintiff's options if the SSA failed to comply with the OFO's order:

> If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline [90 days after the EEOC decision] stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). **If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated.** *See* 29 C.F.R. § 1614.409. (Pl.'s Mem., Ex. 3 at 7–8 (bold in original).)

In early August, the EEOC sent a letter to the SSA reminding it of its duty to comply and also noting that it must send a copy of the compliance report to Plaintiff. (Pl.'s Mem., Ex. 14.)

On September 30, 2008, the SSA emailed the EEOC stating: "Attached in PDF(s) is proof all corrective items were completed in [Plaintiff's case], please close compliance in this matter." (Def.'s Mem., Ex. 4.) The email included a statement that the SSA had promoted Plaintiff to "a GS-13 Social Insurance Specialist position" and appeared to attach a PDF of an SF-50 to verify that the promotion had been made. (*Id.*, Ex. 4.) The email also included statements asserting, and attached PDFs allegedly verifying, that the SSA complied with the July 25 EEOC order by (1) crediting Plaintiff for religious compensatory time, (2) compensating Plaintiff $6,500 in damages plus attorneys' fees, and (3) posting the non-discrimination notice. (*Id.*, Ex. 4.) The email asserted that no training or consideration of discipline for SSA managers was conducted because all the relevant SSA managers had retired. (*Id.*, Ex. 4.)

The record does not contain copies of any of these PDFs attached to the September 30 email. Plaintiff asserts that she has no idea what these PDFs actually contain, or even whether they were in fact actually provided to the EEOC. (Pl.'s Mem., Ex. 2 ¶¶ 27–32.) Plaintiff never received a Compliance Report from the SSA. (*See id.*, Ex. 2.)

On October 10, 2008, Plaintiff filed this action in federal court. On February 6, 2009, John Flanigan, an EEOC compliance officer, sent Plaintiff's counsel a letter to notify Plaintiff that SSA had "provided us documentation sufficient to demonstrate that it has taken the corrective action(s) ordered in the Commission's decision." (*Id.*, Ex. 8.) In May of 2009, Mr. Flanagan also sent the U.S. Attorney's Office a letter indicating compliance had been achieved, but noted, "SSA did not provide a final document titled, Report of Compliance, but did provide

copies of documents demonstrating compliance. As I noted in an e-mail to [Plaintiff] (copies enclosed), nearly all of the relevant documents have been provided to her." (*Id.*, Ex. 3.)

The SSA has never offered to return Plaintiff to the precise original position of *Team Leader*, Social Insurance Specialist (*Team Leader*), in the Community Affairs Section of ORCICA, GS-13. (*Id.*, Ex. 2 ¶¶ 13–14.) Despite the SSA sending the EEOC documents that allegedly demonstrate compliance, and the EEOC compliance officers accepting the SSA's representation that compliance was in fact achieved, there is no evidence that the SSA ever offered Plaintiff any new position after the July 25 EEOC decision. It is unclear why the EEOC accepted the SSA's assertion that it had complied with the EEOC decision.

Plaintiff includes three counts in her Amended Complaint. Count I seeks enforcement of the July 25 EEOC decision by (1) returning Plaintiff to her original position or an equivalent suitable to her, (2) requiring Mr. Gambino to perform EEO training, and (3) ordering the agency to post the EEOC notice throughout its Baltimore campus. (*See* Am. Complaint at 7, 10, 13.) Count II alleges that the SSA violated Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2008), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (2008), by failing to promote Plaintiff to the position of Acting Director of ORCICA. (*See* Am. Complaint at 11–12.) Count III alleges the SSA violated Title VII and the ADEA by failing to promote Plaintiff to the position of Executive Officer in OEA. (*See* Am. Complaint at 12–13.)

<u>ANALYSIS</u>

I.      <u>Summary Judgment</u>

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The materiality of facts is determined by the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

II.     <u>Count I</u>

Because neither of the prerequisites for filing an action in federal court to enforce an OFO order was satisfied, the SSA's motion for summary judgment on Count I will be granted.

a.      <u>The Regulatory Framework for Federal Employee Discrimination Claims</u>

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin, as well as retaliation against employees for engaging in activity protected by Title VII. *See* 42 U.S.C. § 2000e-16; *McNeal v. Montgomery County, Md.*, 307 Fed.Appx. 766, *775 (4th Cir. Jan. 20, 2009) (unpublished); *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008). The EEOC is empowered to enforce Title VII's ban on discrimination, and to create rules and regulations to further enforcement. *See* § 2000e-16(b).

Section 2000e-16(c) authorizes a private right of action for federal employees alleging violations of Title VII. *See* § 2000e-16(c). A federal employee alleging a violation must first file an administrative complaint with the agency, at which point the agency investigates and may refer the matter to an EEOC ALJ. *See Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006). After

the ALJ holds a hearing and makes a decision, the agency must determine whether to adopt the

ALJ's decision and implement the ALJ's ordered relief. *See Scott v. Johanns*, 409 F.3d 466, 468

(D.C. Cir. 2005) (citing 29 C.F.R. § 1614.110).

An employee has four options after the agency has acted. First, the employee may accept

the agency's decision. Second, if the employee is dissatisfied with the agency's decision, the

employee may appeal to the OFO, which may award relief to the employee or affirm the

agency's decision. *See* § 2000e-16(b); 29 C.F.R. §§ 1614.401(a), 1614.405. Third, if the agency

ordered relief but the employee believes the agency has not complied with that order, the

employee "may appeal to the [OFO] for a determination as to whether the agency has complied

with the . . . decision." *See* 29 C.F.R. § 1614.504(b). If the OFO finds noncompliance, "it may

order such compliance . . . ." § 1614.504(c). Fourth, the employee may opt out of the

administrative process altogether and file a civil action in federal court under Section 2000e-

16(c). *See* § 2000e-16(c); 29 C.F.R. § 1614.407; *Laber*, 438 F.3d at 416 n.9. If an employee

chooses this last route, the employee must put the entire issue of whether discrimination occurred

in front of the federal court *de novo*. *Laber*, 438 F.3d at 419–24.

After the employee chooses the second route—appealing the agency's underlying

decision—and the OFO either rules against the employee or orders a remedy the employee finds

unsatisfactory, the employee again has the opportunity to seek a *de novo* civil action in federal

court (putting the entire issue of discrimination in front of the court). *See* § 2000e-16(c); §

1614.407(c); *Laber*, 438 F.3d at 417, 419–24; *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir.

2003) (citing § 2000e-16(c)). However, if, after pursuing the second route, the employee is

satisfied with the OFO's finding and remedial order, the employee may later seek to enforce the

OFO order—if she believes the agency-employer is not complying—by filing either (1) an

enforcement petition with the OFO,[4] or (2) a civil enforcement action in federal district court. *See* 29 C.F.R. § 1614.503(a), (g); *Laber*, 438 F.3d at 417; *Malek v. Leavitt*, 437 F. Supp. 2d 517, 523 n.10 (D. Md. 2006) (Chasanow, J.). Presumably, an employee, like Plaintiff in this case, may also utilize these enforcement mechanisms after pursuing the third route in response to an agency decision—appealing to the OFO seeking agency compliance with the terms of the *agency's* previous decision—to enforce an OFO order requiring compliance with a previous *agency* order.

If the Plaintiff files a civil enforcement action in federal court, "the court reviews neither the discrimination finding nor the remedy imposed . . . only whether the employing agency has complied with the administrative disposition." *See Scott*, 409 F.3d at 469; *accord Laber*, 438 F.3d at 417. In other words, a civil enforcement action is an exception to the general rule that a federal court can only review a federal employee's discrimination claim if that employee puts the entire issue of discrimination in front of the court *de novo*.

### b.   The Prerequisites to filing Civil Enforcement Actions in Federal Court

The SSA argues that a civil enforcement action, to compel compliance with an OFO decision, may only be filed in federal court if one of two prerequisites has occurred: (1) the EEOC determines that the employer-agency was not in compliance with the prior OFO decision or (2) the agency fails to submit a required report of compliance.[5] The SSA contends these

---

[4] If an enforcement petition is filed, the OFO "must 'take all necessary action to ascertain whether the agency is implementing the decision of the [EEOC].'" *Malek*, 437 F. Supp. 2d at 523–24 (quoting § 1614.503(b)). If the agency is found not to be in compliance, the OFO shall undertake efforts to obtain compliance. § 1614.503(b). The EEOC may "clarify a prior decision, but cannot 'change the result' or 'enlarge or diminish the relief ordered.'" *Malek*, 437 F. Supp. 2d at 524 (quoting § 1614.503(c)).

[5] A few courts have used language suggesting this is a jurisdictional inquiry. *See Carver v. Mukasey*, 2009 WL 112846, *1 (W.D. Wash. 2009) (unpublished); *Tshudy v. Potter*, 350 F. Supp. 2d 901, 907 (D.N.M. 2004) (M.J.). However, in an unpublished opinion holding that a civil enforcement action could not be brought in federal court, one district court noted: "I disagree that this suit lacks jurisdictional basis. Resolution of the parties' dispute requires me to construe Title VII and the applicable EEOC regulations. Accordingly, I have subject matter jurisdiction under 28 U.S.C. § 1331." *DesRoches v. Potter*, 2006 WL 1644542, *3 n.5 (D.N.H. 2006) (citing *Laber*, 438 F.3d at 425); *see also Adcock v. Roche*, 2006 WL 1285045, *6 n.8 (M.D. Ga. 2006) (unpublished) ("Unlike the court in *Tshudy*,

prerequisites are required by 29 C.F.R. Section 1614.503(g).[6] Plaintiff, however, asserts that

these Section 1614.503(g) prerequisites only apply if an employee first files an administrative

petition to enforce the OFO order, thereby failing to file a timely civil enforcement action—that

is, within 90 days of the OFO order the employee seeks to enforce. (*See* Pl.'s Mem. at 26–28.)

Although her Memorandum is not entirely clear, it appears that Plaintiff bases this argument on

Section 2000e-16(c). Specifically, because Section 2000e-16(c) authorizes a federal employee to

bring a "civil action" in federal court within 90 days of receipt of notice of final EEOC action,[7]

---

this Court does not view the compliance determination as placing a limit on the Court's jurisdiction, but rather as going to the merits of a proper claim for judicial enforcement.").

[6] Section 1614.503 is entitled "Enforcement of final Commission decisions." Section 1614.503(g) reads in part:

> [where the EEOC has] determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance, the Commission shall notify the complainant of the right to file a civil action for enforcement of the decision pursuant to Title VII . . . or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the mandamus statute, 28 U.S.C. § 1361, or to commence de novo proceedings pursuant to the appropriate statutes. § 1614.503(g).

This regulation may authorize, in addition to a *de novo* challenge of the entire EEOC determination, two different types of suits in federal court to compel agency action: (1) a "civil enforcement action" and (2) "judicial review of the agency's refusal to implement the ordered relief." *See Laber*, 438 F.3d at 417 (internal quotations omitted) (noting that Section 1614.503(g) "provide[s] that an employee may . . . seek judicial enforcement of the OFO's underlying decision either by filing a suit for enforcement of the OFO's decision, or by seeking judicial review of the agency's refusal to submit a report of compliance, a federal employee has three options. The employee may elect to: (1) bring a 'civil action for enforcement;' (2) 'seek judicial review of the agency's refusal to implement the ordered relief;' or (3) 'commence de novo proceedings pursuant to the appropriate statutes.'"). Regardless, the regulation seems to require the two prerequisites before either type of suit may be commenced in federal court. Furthermore, this issue need not be decided here because, as explained in *infra* note 13, the Plaintiff's claim is a civil enforcement action.

[7] Section 2000e-16(c) reads:

> (c) Civil action by employee or applicant for employment for redress of grievances; time for bringing of action; head of department, agency, or unit as defendant
>
> **Within 90 days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Equal Employment Opportunity Commission** upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a)

Plaintiff argues an employee may bring a civil *enforcement* action in federal court within 90 days of an OFO decision regardless of whether the Section 1614.503(g) prerequisites are met. (*See id.* at 16–21, 26–28 (emphasis added).)

I disagree with Plaintiff's argument and hold that the Section 1614.503(g) prerequisites apply even if an employee files the civil enforcement action within 90 days of the OFO decision. To begin with, applying the Section 1614.503(g) prerequisites makes sense in light of the fact that a civil enforcement action is an exception to the general rule that an employee must put her entire discrimination claim *de novo* in front of a federal court. Presumably, this exception exists in part because the EEOC lacks the tools, such as mandamus power, to compel agency compliance. It would be enormously inefficient, and would encourage agency noncompliance and foot-dragging, to force an employee to re-litigate her entire discrimination claim in order to access these coercive tools after she has prevailed at every stage of the administrative process: the OFO had already found in her favor, ordered relief, and subsequently found that the agency was failing to comply with that relief (or was unable to determine if the agency was complying because the agency refused to submit a compliance report).

Plaintiff's argument—which implicitly requires Section 2000e-16(c)'s definition of "civil action" to include civil enforcement action—also contradicts Fourth Circuit precedent. In *Laber v. Harvey*, the court suggested that there were only two avenues into federal court after an OFO

---

of this section, Executive Order 11478 or any succeeding Executive orders, or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, **an employee or applicant for employment**, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, **may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.** *See* § 2000e-16(c) (bold added).

decision, *de novo* under Section 2000e-16(c) or more limited review under Section 1614.503(g). 438 F.3d at 416–17. This implies both that civil enforcement actions are *not* "civil actions" under Section 2000e-16(c) and that *all* civil enforcement actions are governed by Section 1614.503(g). *See id.* (emphasis added); *see also id.* at 420 (suggesting that "civil actions" brought under Section 2000e-16(c) always require the federal court to review the entire claim of discrimination *de novo*).[8] Although *Laber's* actual holding does not dictate an outcome in this case,[9] and *Laber* explicitly noted that "the contours of [civil enforcement actions] are not relevant here[,]" *Laber*, 438 F.3d at 423, the Fourth Circuit's reasoning obviously weighs heavily on this Court.

In addition to the Fourth Circuit precedent, case law in this district supports the argument that the Section 1614.503(g) prerequisites apply to all actions seeking to enforce OFO decisions filed in federal court. In *Malek v. Leavitt*, *supra*, an employee filed a civil enforcement action after unsuccessfully seeking an administrative petition to enforce an OFO decision (and therefore the civil enforcement action was filed more than 90 days after the OFO decision the employee sought to enforce). 437 F. Supp. 2d. The court held that the Section 1614.503(g) prerequisites applied to the employee's civil enforcement action. *Id.* at 524.[10] *Malek* suggested that these prerequisites applied to all civil enforcement actions: immediately after identifying the prerequisites, the court noted that the "alternative route to federal court" would be seeking review of the entire discrimination claim under Section 2000e-16. *Id.* at 524 n.10. If the court believed another "alternative route" was bypassing the administrative petition altogether and

---

[8] *Cf. Timmons*, 314 F.3d at 1233 ("[W]e believe that the better-reasoned cases hold that a plaintiff seeking relief under § 2000e-16(c) is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the government on issues resolved in his or her favor."); *Tshudy*, 350 F. Supp. 2d at 907 (citing *Timmons*, 314 F.3d at 1232) ("Plaintiff's complaint is seeking more relief than the EEOC awarded, and in such circumstances, the Tenth Circuit has determined that Plaintiff is not seeking enforcement of the [agency decision] and is in fact pursuing an action under 42 U.S.C. § 2000e-16(c).").

[9] *Laber's* specific holding was only that "Title VII does not authorize a federal-sector employee to bring a civil action alleging only that the OFO's remedy was insufficient . . . . [T]o claim entitlement to a more favorable remedial award, the employee must place the employing agency's discrimination at issue." *Laber*, 438 F.3d at 423.

[10] *Cf. Carver*, 2009 WL at *2 (unpublished); *DesRoches*, 2006 WL at *4 (unpublished).

immediately seeking enforcement of the OFO order in federal court, it presumably would have mentioned it. Similarly, I do not see any reason for exempting the Section 1614.503(g)'s prerequisites simply because an employee fails to file an administrative enforcement petition and instead immediately files an action in federal court. Rather, failing to apply the prerequisites would undermine "the goal of resolving many administrative complaints without judicial intervention." *Cf. Laber*, 438 F.3d at 421 n.16.

In fact, several other courts have also implied that the prerequisites apply to any effort to file a civil enforcement action in federal court. *See, e.g.*, *Timmons*, 314 F.3d at 1232 (in dicta, noting that "an EEOC determination of non-compliance" is a "prerequisite" to a civil enforcement suit); *Tshudy*, 350 F. Supp. 2d at 903–07 (M.J.) (where plaintiff had filed a petition with the OFO to enforce the agency's remedial order and subsequently sought to enforce that order in federal court, citing to Section 1614.503(g) and holding "[i]n order for this Court to have jurisdiction over Plaintiff's enforcement action, there must have been an EEOC determination of non-compliance[]"); *DesRoches*, 2006 WL at *2 (unpublished) (in describing employee's options if she believes an OFO appellate decision is not being complied with, citing solely to Section 1614.503 and noting "[a] complainant may pursue an enforcement proceeding in federal court if the EEOC 'has determined that an agency is not complying with a prior decision[]'").

To be sure, Plaintiff's argument is not frivolous.[11] Her position finds support in a handful of federal cases. *See Wilson v. Pena*, 79 F.3d 154, 166–67 (D.C. Cir. 1996); *Houseton v. Nimmo*,

---

[11] Plaintiff argues that the language of the OFO's decision in this case supports her argument. It read, in part: "If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. The complainant also has a right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement." (Pl.'s Mem. at 26–28 (citing Pl.'s Mem, Ex. 3).)  This sentence suggests that an employee is not required to obtain an EEOC non-compliance determination before filing a civil enforcement action. This language is not necessarily incompatible with the interpretation that prior to filing in federal court either an employee must obtain an EEOC noncompliance determination *or* the agency must fail to file a compliance report. An employee may in fact have "a right to file a

670 F.2d 1375 (9th Cir. 1982) (holding, without discussing, that an employee may file in federal court to enforce a Civil Service Commission Review Board order, despite no mention of an agency failure to file a compliance report or Board finding of noncompliance); *Dellinger v. Potter*, 2009 WL 2243834, *6–7 (S.D. Ohio 2009) (unpublished) (in dicta, noting that Plaintiff may seek a civil enforcement action in federal court, even if the two prerequisites are not met, if OFO has not affirmatively found compliance prior to initiation of the suit); *cf. Moore v. Devine*, 780 F.2d 1559, 1562 (11th Cir. 1986) (noting that once the EEOC makes a final decision the employee can generally seek an enforcement action in federal court, and not expressly discussing any prerequisites for such actions). However, these cases are not particularly persuasive, as *Dellinger* is dicta in an unpublished district court opinion, and *Houseton* never expressly discusses the issue.[12]

In the final analysis, despite this handful of cases supporting a contrary conclusion, *Laber* and *Malek* persuade me that the Section 1614.503(g) prerequisites—(1) the EEOC finding agency-employer noncompliance or (2) the agency-employer failing to submit a required report of compliance—apply to the filing of civil enforcement actions within 90 days of the OFO decision the employee is seeking to enforce.

---

civil action to enforce compliance . . . prior to . . . an administrative petition" if the agency failed to file a compliance report. That said, if all civil enforcement actions are subject to the Section 1614.503(g) prerequisites, this language is at least misleading.

[12] *Wilson v. Pena* concluded that, where the OFO failed to act on an administrative petition for enforcement for more than 180 days, an employee may bring a civil enforcement action under Section 2000e-16(c). 79 F.3d at 166–67. Because this decision implicitly holds that a civil enforcement action may be a "civil action" under Section 2000e-16(c), it supports Plaintiff's argument. That said, putting aside the question of whether *Wilson's* reasoning is inconsistent with *Laber* or *Malek*, the facts of *Wilson* are distinguishable from the facts in this case. It is one thing to hold that an employee may file a civil enforcement action under Section 2000e-16(c) when the OFO failed to act on the employee's administrative enforcement petition. In that situation, the EEOC inaction prevents the employee from even obtaining an administrative compliance decision—as an employee is entitled to under 29 C.F.R. Section 1614.503(b) —and the employee is left with no alternative enforcement mechanism other than pursuing an action in federal court. Where, however, the employee simply never files a Section 1614.503 administrative petition to enforce the OFO order, the reasons for allowing the employee access to the federal courts are hardly as compelling.

c.   Plaintiff's Enforcement Action

In light of the above conclusion, one of the section 1614.503(g) prerequisites must have been satisfied for Plaintiff to avoid summary judgment on her civil enforcement action (Count I).[13] Because Plaintiff does not contend that the EEOC ever determined that the SSA failed to comply with the July 25 order, Count I only survives if the SSA failed to submit a compliance report. *See* § 1614.503(g). Since district courts are generally precluded from reversing an OFO remedy decision without also reviewing the underlying issues of discrimination, *see generally Laber*, 438 F.3d, it logically follows that district courts should avoid reversing an EEOC decision regarding the adequacy of a compliance report. In fact, two district courts have noted that such a decision is properly left to the EEOC. *See Dellinger*, 2009 WL at *7 (unpublished); *Drennon-Gala v. Ashcroft*, 2006 WL 6010901, *3 (W.D. Wis. 2006) (unpublished).

This Court is puzzled as to why the EEOC appears to believe compliance has been achieved. However, viewing the evidence in the light most favorable to the Plaintiff, I find that the EEOC accepted the September 30 email from the SSA as an adequate compliance report, and the SSA therefore did *not* "fail[] . . . to submit any required report of compliance." *See* § 1614.503(g). The OFO order required the SSA to submit a compliance report with supporting documents to the EEOC compliance officer, and send "a copy of all submissions" to Plaintiff. (Def.'s Mem., Ex. 3 at 6–7.) The September 30 email included assertions of compliance with attached PDFs allegedly demonstrating compliance. Although the content of the documentary

---

[13] In her response to Defendant's motion, Plaintiff suggests she is asking the court to compel agency action under the Administrative Procedure Act (APA), 5 U.S.C. § 706, and "compel an officer or employee of the United States . . . to perform a duty owed to the plaintiff" under 28 U.S.C. § 1361. (Pl.'s Mem. at 19.) Whether Plaintiff asserts Count I is something other than a civil enforcement action is unclear, and whether this would change the analysis is doubtful. *See supra* note 6. Regardless, Count I in Plaintiff's amended complaint is a civil enforcement action because it is brought under Title VII and the Rehabilitation Act and asks this Court to force compliance with an EEOC decision. *See Adcock*, 2006 WL at *4 n.6.

support of compliance (the PDFs) in the email is unknown, and Plaintiff never received this

documentary support, there is no material dispute that the EEOC compliance officer received an

email purporting to be a compliance report and found it adequate. (Pl.'s Mem., Ex. 8; Pl.'s

Mem., Ex. 3.) The July 25 order was handed down by the EEOC, and it is the EEOC's

responsibility to either enforce it or find noncompliance (in which case this Court would have a

proper role in forcing compliance). If Plaintiff was frustrated by her failure to obtain an

acceptable position after the July 25 order, she could have brought the entire claim before a

district court under Section 2000e-16(c) or filed an administrative petition to enforce the

decision. Instead, she chose a route that the regulatory framework does not permit and summary

judgment is therefore appropriate.[14]

III.    Counts II and III

Because Plaintiff fails to present evidence sufficient to allow a reasonable juror to

conclude the agency discriminated or retaliated against her in failing to promote her to Acting

Director of ORCICA or Executive Officer in OEA, the SSA's Motion for Summary Judgment on

Counts II and III will be granted.[15]

Again, Title VII prohibits employment discrimination based on race, and prohibits

retaliation against employees for engaging in activity protected by Title VII, such as filing

---

[14] Plaintiff also has filed a Motion to Disregard the SSA's argument that, if this Court found that reviewing compliance was appropriate, equity precluded ruling in favor of the Plaintiff and therefore summary judgment was appropriate. Since this Court does not find that reviewing compliance is appropriate, it need not reach the merits of this motion.

[15] This Court has some question about whether Counts II and III in the Amended Complaint—which include little more than the conclusory statements that the SSA "discriminatorily" bypassed Plaintiff for promotion on two occasions in favor of a younger white woman—would survive a 12(b)(6) motion to dismiss in light of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1927 (2009). *Cf. Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–12 (3d Cir. 2009) (describing the demise of *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). However, since the impact of *Twombly* and *Iqbal* on employment discrimination cases in the Fourth Circuit is still unsettled, and these counts do not survive summary judgment anyway, this Court need not decide the 12(b)(6) issue.

complaints of discrimination. § 2000e-16; *McNeal*, 307 Fed.Appx. at *775; *Montgomery*, 546 F.3d at 707. The ADEA prohibits employment discrimination based on age. *Leibowitz v. Cornell Univ.*, --- F.3d ----, 2009 WL 3403147, *9 (2d Cir. Oct. 23, 2009) (citing 29 U.S.C. § 623(a)(1)).

To survive a motion for summary judgment on an employment discrimination claim under Title VII or the ADEA, the plaintiff must "offer[] direct or circumstantial evidence [of discrimination], or proceed[] under the proof scheme set forth in [*McDonnell Douglas*]." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996); *accord Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007); *cf. Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) ("The *McDonnell Douglas* framework applies to both Title VII and ADEA claims."); *Bailey v. Anne Arundel County, Md.*, 259 F. Supp. 2d 421, 425 (D. Md. 2003) (Harvey, J.) ("The legal standards to be applied to plaintiff's Title VII claims and to his ADEA claims are essentially identical."). *McDonnell Douglas* is appropriate in analyzing summary judgment on Counts II and III. *Cf. Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008) (examples of "direct" or "circumstantial" evidence of discrimination include suspicious timing, ambiguous oral or written statements, comments directed at employees in the protected group, systematic better treatment of employees outside the protected group, etc.)

Under the *McDonnell Douglas* three-step framework, the plaintiff "must first prove a *prima facie* case of discrimination by a preponderance of the evidence."[16] *Evans*, 80 F.3d at 959. If the plaintiff proves a prima facie case, the defendant may present a "legitimate, non-discriminatory reason for its employment action." *Evans*, 80 F.3d at 959; *accord Holland*, 487 F.3d at 214. The defendant's burden here is one of production, not persuasion. *Holland*, 487 F.3d

---

[16] To establish a prima facie case, the plaintiff must, by a preponderance of the evidence, show "(1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959–60; *accord Chappell-Johnson*, 440 F.3d at 488.

at 214. If the defendant presents such a reason, the burden shifts back to the employee to present evidence from which a reasonable juror could find that the proffered reason was a pretext for discrimination. *See Evans*, 80 F.3d at 959.

A plaintiff may prove pretext "by showing that the employer's proffered explanation is unworthy of credence." *Holland*, 487 F.3d at 214 (internal citations and quotations omitted). In the failure to promote context, a plaintiff "prove[s] pretext by showing that he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons." *Moore v. Mukasey*, 305 Fed.Appx. 111, *116 (4th Cir. 2008) (unpublished) (internal quotations omitted) (quoting *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)). This Court will not, however, "act as a 'super-personnel department' and undertake to determine whether defendant's perceptions of an employee's qualifications are erroneous, without regard to the defendant's ability to assess the full dimension of its employees' qualifications and its ability to view its employees in a work environment." *Bailey*, 259 F. Supp. 2d at 429.

Assuming, without deciding, that Plaintiff proved a prima facie case of discrimination on Counts II and III, Plaintiff has failed to show that the SSA's reasons for failing to promote Plaintiff were illegitimate or pretextual, and therefore summary judgment is appropriate.

    a.  <u>Count II</u>

The SSA presents evidence that Ms. Neal was hired as Acting Director of ORCICA because the SSA wanted to fill the temporary, 120 day position "promptly" and "facilitate a smooth and effective transition[,]" and therefore the SSA only wanted to hire someone from within ORCICA. (Def.'s Mem., Ex. 9 ¶¶ 4–6.) Furthermore, Mr. Gambino considered Ms. Neal

"an outstanding employee who was very competent in the work and operation of ORCICA." (*Id.*, Ex. 9 ¶ 8.) Both timeliness and facilitating a smooth transition are legitimate considerations in filling a vacancy, particularly when the position is temporary. The question therefore becomes whether Plaintiff has shown that these legitimate reasons were pretextual.

Plaintiff has failed to meet her burden of showing pretext. Plaintiff argues that Mr. Gambino transferred her out of ORCICA for the purpose of creating this pretextual reason for denying Plaintiff this promotion. (Pl.'s Mem. at 30.) The only evidence Plaintiff appears to cite for this argument is (1) the fact she was at least as qualified as Ms. Neal for the promotion, and (2) Mr. Gambino's reassignment of Plaintiff was found to be discriminatory and retaliatory.[17] This evidence is insufficient. The question of why Mr. Gambino reassigned Plaintiff to OPI is a distinct and different question from why Mr. Gambino did not promote her. No reasonable juror could find that discrimination in the reassignment, coupled with Ms. Neal and Plaintiff's comparable qualifications, proves that the reassignment was also used to create a pretext for denying Plaintiff the promotion. Mr. Gambino's discriminatory and retaliatory reassignment of Plaintiff is simply not particularly probative of discriminatory intent in promoting Ms. Neal. *Cf. McNeal*, 307 Fed.Appx at *774 (internal quotations omitted) (quoting *Brinkley v. Barbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)) ("To prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination."). Regardless of why Plaintiff was reassigned to OPI, the fact remains she was not working in ORCICA at the

---

[17] It is not entirely clear whether the ALJ found that the reassignment was retaliatory only or both discriminatory and retaliatory. (*See* Pl.'s Mem., Ex. 1. at 50–52.) This Court assumes, without deciding, that the ALJ found the reassignment to be retaliatory and discriminatory based on Plaintiff's race, color, sex, age, and religion.

time of the promotion, and she fails to offer persuasive evidence to undermine Mr. Gambino's

assertion that promoting an employee outside of ORCICA to Acting Director was impractical.

      b. <u>Count III</u>

      The SSA presents evidence that Ms. Neal was hired as an Executive Officer in OEA

because her credentials put her among thirteen individuals on a "best qualified list" and Mr.

Byrd, who made the promotion decision and would be the Executive Officer's direct supervisor,

had a good working relationship with and trusted Ms. Neal. (*See* Def.'s Mem. 15 (citing Def.'s

Mem., Ex. 12).) Since Plaintiff was also on the best qualified list, the SSA's reason for denying

Plaintiff the promotion boils down to the good working relationship and trust between Ms. Neal

and Mr. Byrd. A good working relationship and trust between a supervisor and employee is a

legitimate reason for promotion, so again the question becomes whether Plaintiff has shown that

the reason was pretextual. *Cf. Newsom v. Barnhart*, 116 Fed.Appx. 429, *432–33 (4th Cir. 2004)

(unpublished) (supervisor-hirer's observations that employee had strong inter-personal skills and

management experience was a legitimate reason for promotion); *Johnson v. Runyon*, 928 F.

Supp. 575, 583 (D. Md. 1996) (Davis, J.) ("An employer can properly take into account both the

objective factors as well as the more subjective factors like good interpersonal skills and her

ability to lead a team.").

      Plaintiff has again fallen short of showing pretext. Although Plaintiff's arguments are not

entirely clear, she appears to assert that the SSA's proffered justification was a pretext for

retaliating against her for her EEO activity and discriminating against her based on her age and

race. Plaintiff tries to prove pretext by noting that (1) Plaintiff's application score was slightly

higher than Ms. Neal's, (2) Mr. Gambino had discriminated and retaliated against Plaintiff in

reassigning her, and (3) Mr. Gambino advised Mr. Byrd that Ms. Neal should receive the promotion. (*See* Pl.'s Mem. 9–10, 30–31.) Plaintiff's slightly higher application score does not undermine the credibility of the SSA's reasons for Ms. Neal's promotion. *See Moore*, 305 Fed.Appx. at *116 (citing *Heiko*, 434 F.3d at 261) ("[A] Title VII plaintiff cannot rely on his qualifications to establish pretext if he asserts that his qualifications are similar or only slightly superior to those of the person ultimately selected for promotion."); *Hendricks v. Geithner*, 568 F.3d 1008, 1012 (D.C. Cir. June 19, 2009) (internal citations omitted) (noting pretext can be established by a showing of the plaintiff's superior qualifications only if "she was 'significantly' or 'markedly' more qualified for the job than was the candidate who actually received it"; otherwise, courts "rightfully defer to the business judgment of an employer and have no cause to infer discrimination"). Outside of his involvement in past discrimination against Plaintiff, there is nothing to suggest Mr. Gambino's advice to Mr. Byrd was discriminatory. Nor is Mr. Gambino's past discrimination against Plaintiff particularly probative of whether Mr. Gambino had any discriminatory intent when advising Mr. Byrd. *Cf. McNeal*, 307 Fed.Appx at *774 (internal quotations omitted) (quoting *Brinkley*, 180 F.3d at 608, *abrogated on other grounds by Desert Palace*, 539 U.S.) ("To prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination."). Most importantly, Mr. Byrd testified that the final promotional decision was his, his explanation that he chose Ms. Neal over Plaintiff because of his good working relationship with Ms. Neal is perfectly believable, and Plaintiff fails to introduce any evidence to undermine Mr. Byrd's credibility or to suggest Mr. Byrd himself acted with discriminatory intent.

In sum, Plaintiff fails to present evidence that would allow a reasonable juror to conclude the agency discriminated or retaliated against Plaintiff, in violation of Title VII or the ADEA, in failing to promote her to Acting Director or Executive Officer. Defendant's Motion for Summary Judgment will therefore be granted on Counts II and III.

IV.   Plaintiff's Motion for Discovery

Plaintiff argues that "if the court finds that she in fact has not proven facts essential to justify her opposition, the court should deny the summary judgment motion or order a continuance in order to allow her to take discovery [under Federal Rules of Civil Procedure 26 and 56(f)]." (Pl.'s Mem. at 31.) Plaintiff, in an affidavit, asserts that she needs additional discovery to (1) determine which documents, if any, were attached to the SSA's September 30 compliance report, (2) determine if anyone told the EEOC's compliance officer that Plaintiff had been restored to her original position, and (3) gather more information pertaining to the promotion decisions that are the subject of Counts I and II. (*Id.*, Ex. 2 ¶¶ 27–32.)

"If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." FED. R. CIV. P. 56(f). However, "a district court has wide latitude in controlling discovery . . . ." *Ardrey v. UPS*, 798 F.2d 679, 682 (4th Cir. 1986).

The request for additional discovery pertaining to Count I is denied. Regardless of the contents of the PDFs in the compliance report or how the EEOC compliance officer came to believe that Plaintiff had been offered an acceptable position, the EEOC never made a finding of

noncompliance and the SSA did not fail to submit a compliance report. *See supra* Section II.c.

Consequently, additionally discovery pertaining to Count I is unnecessary.

      The request for additionally discovery pertaining to Counts II and III is also denied.

Plaintiff has been pursuing these claims for years in administrative courts, the administrative

record pertaining to these claims is substantial (including testimony from SSA managers), and

this Court therefore sees no justification for prolonging this litigation. *Cf. Newsom v. Barnhart*,

116 Fed.Appx. at *433 (unpublished) ("Given the breadth of the administrative record, we

cannot find an abuse of discretion in the district court's refusal to permit further discovery.").


DATE:  <u>1/6/2010</u>           <u>   /s/               </u>

                                     J. Frederick Motz

                                     United States District Judge